State of New York
Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:  October 20, 2016               521788
_____

In the Matter of the Estate of
    FLORENCE M. WARREN,
    Deceased.

LEONARD ARKELL WARREN,
                    Respondent;          MEMORANDUM AND ORDER

JAMES W. WARREN, as
    Administrator of the Estate
    of FLORENCE M. WARREN,
    Deceased,
                    Appellant.
_____

Calendar Date:  September 9, 2016

Before:  McCarthy, J.P., Egan Jr., Devine, Clark and Aarons, JJ.

_____

        Patricia J. Shevy, Albany, for appellant.

        Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains
(Robert A. Spolzino of counsel), for respondent.

_____

Devine, J.

        Appeal from an order of the Surrogate's Court of Greene
County (Wilhelm, S.), entered December 31, 2014, which, among
other things, partially granted petitioner's application, in a
proceeding pursuant to SCPA 1420, to construe decedent's last
will and testament.

        Florence M. Warren (hereinafter decedent) married Leonard
Warren (hereinafter Warren) in 1950, and the couple raised the
eight children resulting from that union, as well as Warren's two
children from a prior marriage.  Petitioner and his sister were

decedent's stepchildren and, while their upbringing was identical to that of their half siblings, they were never formally adopted by decedent. Decedent executed a last will and testament in 1993 that bequeathed $2,000 to each of the 10 children who survived her. The will further directed that "property equal in value to the maximum amount which can pass . . . free of [f]ederal estate tax" be used to establish a testamentary trust for Warren's benefit and that, upon Warren's death, the trust corpus be "divided equally among those of his [10] children who survive him" or their descendants. Decedent also left her residuary estate to Warren "absolutely," and named him as executor. The will did not explicitly address the possibility that decedent would outlive Warren, a possibility that was realized when Warren died in 2006 and caused the residuary clause to lapse (see Matter of Wells, 113 NY 396, 400 [1889]; cf. EPTL 3-3.3).

Decedent passed away in 2014, after which her will was admitted to probate and letters of administration were issued to respondent, her son. Respondent specified that all 10 children were entitled to the $2,000 bequests under decedent's will. The failure of the trust due to the prior death of its lifetime beneficiary, Warren, would have ordinarily "accelerate[d], rather than destroy[ed], the remainder interest in the residue" and implied a direct testamentary gift of the would-be trust corpus to the 10 children (Matter of Bieley, 91 NY2d 520, 529 [1998]; see Matter of Fordham, 235 NY 384, 387 [1923]). The corpus was to be funded with whatever assets could pass free from estate tax liability, however, and no such assets were available at the time of decedent's death due to inter vivos gifts made by her through respondent, her attorney-in-fact. Respondent therefore claimed that, given the failure of the residuary clause in the will, the remaining assets in the estate must pass under the laws of intestacy to decedent's issue, namely, her eight biological children (see EPTL 1-2.10, 4-1.1 [a] [3]).

Petitioner commenced this construction proceeding seeking, as is relevant here, a determination that the will demonstrated decedent's intent to leave her residuary estate to her biological children and her two stepchildren (see SCPA 1420 [1]). Respondent answered and moved for summary judgment dismissing the

petition for lack of standing.  Surrogate's Court denied the
motion as procedurally deficient and directed respondent to serve
an amended answer that was properly verified (see SCPA 303).  The
court further agreed with petitioner that decedent intended to
bequeath her residuary estate to all 10 children in the event
that Warren predeceased her and, as such, partially granted the
petition.  Respondent now appeals.

        Respondent first asserts that petitioner lacked standing to
bring the construction proceeding, which may only be commenced by
"[a] fiduciary or a person interested in obtaining a
determination as to the validity, construction or effect of any
provision of a will" (SCPA 1420 [1]).[1]  "A motion for summary
judgment in a pending construction proceeding is rather an
unusual procedure" and requires a court to "decide whether the
petitioner has such a real financial interest in the
determination of the issues as would qualify [him or] her to
bring the proceeding" (Matter of Rose, 58 Misc 2d 576, 577 [Sur
Ct, NY County 1967], affd without opinion 29 AD2d 635 [1967],
affd on opinion of trial court 23 NY2d 870 [1969]; see SCPA 103
[39]).  Standing accordingly exists if the person bringing the
proceeding advances a colorable — even if not ultimately
successful — argument that he or she is "entitled to a share in
the property that will be affected by the construction of the
will" (Matter of Bernstein, 40 AD3d 1086, 1087 [2007], lv
denied 9 NY3d 813 [2007]; see Monypeny v Monypeny, 202 NY 90, 92
[1911]; Matter of Rose, 58 Misc 2d at 578).  Petitioner plausibly
argues that the terms of the will evince an intent on decedent's
part to bequeath the residuary estate to both her biological

_____

        [1] Surrogate's Court did not address respondent's arguments
regarding standing, apparently because it denied his motion for
summary judgment due to the absence of a copy of the pleadings in
the motion papers (see SCPA 102; CPLR 3212 [b]).  Inasmuch as the
record before us contains a complete copy of the pleadings,
including an answer that was subsequently verified by respondent,
we will excuse that failure in the interest of judicial economy
and address the argument on its merits (see Sanacore v Sanacore,
74 AD3d 1468, 1469 [2010]).

children and stepchildren in the event that Warren predeceased her, a claim sufficient to grant him standing to commence the present construction proceeding.

Turning to the merits, we affirm. "The primary rule of testamentary construction is that a will should be read so as to reflect the actual intent of the testator" (Matter of Gallucci, 143 AD2d 1015, 1017 [1988] [citations omitted]), and "[e]qually well established is the axiom of testamentary construction that the testator is presumed to have intended to dispose of the whole estate by will, and did not intend intestacy as to any part of it" (Matter of Bieley, 91 NY2d at 525). These two principles point to the existence of "the well-settled doctrine of gift by implication . . . available in rare and exceptional cases where a reading of the entire will reveals that the testator intended to dispose of his [or her] property in a certain manner but through error or omission failed to make clear his [or her] exact intent or purpose" (Matter of Gallucci, 143 AD2d at 1017 [internal quotation marks and citation omitted]; see Matter of Bieley, 91 NY2d at 525-526). Common sense and justice require that such a situation be corrected but, "[t]o uphold a legacy by implication[,] the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference" (Matter of Kronen, 67 NY2d 587, 589 [1986] [internal quotation marks and citations omitted]; see Matter of Bieley, 91 NY2d at 526).

The will here includes specific bequests to all 10 children "as a substitute for the birthday and Christmas age checks they were wont to receive," directs the creation of a testamentary trust funded by certain estate assets and contains a residuary clause to dispose of the remainder. There is, as such, no doubt that it "reveals a conscientious effort to provide for a complete disposition of decedent's property" (Matter of Bieley, 91 NY2d at 526). The trust provisions of the will were for the benefit of Warren, encompassed as much of the estate as could be accomplished while still receiving favorable tax treatment, and directed that the trust corpus would "be divided equally among those of [Warren's 10] children who survive him" or their descendants upon Warren's death. Respondent also acknowledges in

his brief that, had any assets been available to fund the would-be trust, those assets would have directly passed to the remaindermen given that decedent outlived Warren (see id. at 529; Matter of Fordham, 235 NY at 387). The only provision of the will that does not provide for equal bequests to all 10 children is the absolute devise of the residuary estate to Warren, a gift that fails to account for the possibility that Warren would die before decedent.

Briefly put, while the residuary clause of the will is silent as to what would happen if decedent outlived Warren, all of her other testamentary dispositions evince the goal of equally dividing her assets among all 10 children, either at the time of her death or Warren's death. There is nothing in the will to suggest that she intended a contrary result with regard to the residuary estate if Warren died before her, or that she had any interest in excluding petitioner and his sister from that part of her estate. The will implies the contrary and that decedent considered all 10 children as her own, as she named petitioner as one of several trustees in the will and regretted that she could not name all of her "other children" as well. Thus, Surrogate's Court correctly "g[ave] effect to the expressed general testamentary plan and purpose of the testator" by implying a provision in decedent's will leaving her residuary estate to all 10 children (Matter of Selner, 261 App Div 618, 622 [1941], affd 287 NY 664 [1941]; see Matter of Bieley, 91 NY2d at 526-527; Matter of Thall, 18 NY2d 186, 193-194 [1966]; Matter of Haber, 281 App Div 383, 385-386 [1953], affd 306 NY 706 [1954]; cf. Matter of Kronen, 67 NY2d at 589-590 [no gift by implication where bequest explicitly effective only if the decedent died at same time as spouse]; Matter of Standish, 4 AD3d 858, 859 [2004] [same]).

Respondent's remaining contentions have been considered and found to be unavailing.

McCarthy, J.P., Egan Jr., Clark and Aarons, JJ., concur.

ORDERED that the order is affirmed, with costs.

ENTER:

Robert D. Mayberger
Clerk of the Court